HELLER et al. v. PENDLETON et al.

PENDLETON et al. v. HELLER et al.

(District Court, S. D. New York. November 10, 1906.)

SHIPPING—CHARTER PARTY—BREACH BY DELAY IN REPORTING FOR CARGO.

Where a charter party provided that the vessel should be tight, staunch, strong, and in every way fitted for the voyage, and that she should proceed under the charter after completing the voyage she was then on, no time for delivery being further specified, a delay in reporting for cargo after completing her then voyage caused by the necessity for repairs to make her seaworthy was a breach of the contract, which renders her liable for the damages resulting to the charterer.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Shipping, §§ 165–168.]

In Admiralty. Action by charterer for breach of charter and cross-action for demurrage.

Hyland & Zabriskie, for Heller and Hirsh.
Avery F. Cushman, for Pendleton and others.

ADAMS, District Judge. The first of the above entitled actions, Heller and Hirsh against Pendleton, was brought to recover damages for an alleged breach of a charter of the schooner M. V. B. Chase, dated November 16, 1904. The contract was as follows:

"This Charter Party, made and concluded upon in the City of New York, the 16th day of November 1904 Between Pendleton Bros. agents for owners, of the Schr. 'M. V. B. Chase,' of New York of the burthen of 380 Tons or thereabouts, register measurement, now lying in the harbor of New Haven, Conn. of the first part, and Mess. Heller, Hirsch & Co. of the second part, witnesseth, that the said party of the first part agrees in the freighting and chartering of the whole of the said vessel, * * * unto said party of the second part. for the voyage from South Lyme, Conn. to Savannah, Ga. Sufficient water guaranteed at loading place or charterers to move vessel to a place where there is sufficient water and lighter cargo at their expense. Vessel drawing ab't 9 ft. light & abt 16 ft. loaded with full cargo coal on the terms following. The said vessel shall be tight, staunch, strong and in every way fitted for such a voyage, and receive on board during the aforesaid voyage the merchandise hereinafter mentioned. * * * The said party of the second part doth engage to provide and furnish to the said vessel a cargo of acid scrap, in bulk, estimated between 6/700 tons the bills of lading to be signed without prejudice to this Charter, and to pay to said party of the first part, or agent, for the use of said vessel during the voyage aforesaid, One dollar & twenty-five cents ($1.25) per gross ton delivered and charterers to load, trim and discharge cargo free of expense to vessel and to tow vessel from New Haven to loading place or places and when loaded to sea. It is agreed that the lay days for loading and discharging shall be as follows (if not sooner despatched) commencing 24 hrs from the time the vessel is ready to receive or discharge cargo. Dispatch for loading and discharging to be One hundred (100) tons per day. A delay at one place to be offset by quicker dispatch at the other places and that for each and every day's detention by default of the said party of the second part, or agent Forty $40.00 dollars per day, day by day, shall be paid by said party of the second part or agent, to the said party of the first part, or agent. The cargo or cargoes to be received and delivered alongside. within reach of the vessels tackles. It is understood that the vessel is now at New Haven discharging lumber and to proceed under this charter after completing her present voyage. * * * "

It appears that the schooner prior to reaching New Haven was on a voyage from the south, and at the end of it she was in a condition requiring some repairs. These were made and cost $320.62. They caused some delay in her reporting to the charterers. By reason of this they claim that though they did not insist upon a right to cancel the contract they were entitled to damages.

The law in this connection is expressed in the (2d Ed.) Amer. & Eng. Ency. of Law, vol. 7, p. 206, as follows:

"When there is no express stipulation in the contract of affreightment as to the time at which the vessel shall begin and complete her voyage, there is an implied obligation that the vessel shall sail without unnecessary delay and proceed with all reasonable dispatch to her destination, and for any injury caused by an unreasonable or unnecessary delay the shipowner is liable."

It is provided in the contract that the vessel "shall be tight, staunch, strong and in every way fitted for such a voyage." This did not leave any margin for the vessel's repairs at the termination of the discharge, yet she was not then in a condition for delivery and some delay ensued before she was fitted for service and the libellants claim that they were damaged thereby, in being obliged to incur extra expense in

loading the cargo, lightering the same to the place where the schooner was finally loaded and further sustained a loss in interest on the value of the cargo during the time of delay, amounting to the sum of $1,600.

South Lyme is situated upon an open roadstead and vessels of the size of the Chase when loading to the draft provided for in the contract, are obliged to leave the wharf and either take the goods in from a lighter while lying in the roadstead or proceed to some port in the vicinity. When the Chase went to the wharf, December 16th, she soon took ground and the master declined to remain there, whereupon the libellants' chartered steam lighter, upon the master's request, towed her to New London, where she was finally loaded. It is said, with apparent truth, that loading vessels in such a roadstead, becomes more dangerous and difficult as the season advances, hence the lightering became necessary through the vessel's default. I think this claim is fairly well sustained by the testimony and that the libellants are entitled to succeed. Hence there will be a decree in their favor upon their libel, with an order of reference.

The action of Pendleton et al. against the libellants for demurrage depends to some extent upon the result of the commissioner's finding in the first action and he will consider it upon the merits and make such report thereon, both with respect thereto and the damages, as the ascertained facts may require.