### BROTHERS VALLEY COAL CO. v. MINOTT et al.

#### (District Court, S. D. New York. February 25, 1913.)

SHIPPING (§ 43*)—CHARTERS—BREACH BY DELAY IN REPORTING FOR LOADING.
　　Where a vessel chartered to proceed without unnecessary delay on discharging the cargo then on board to the place of loading for the charterer was delayed by the necessity of making repairs to render her seaworthy for the voyage, not due to any mishap occurring after the charter was made, she was chargeable with breach of the contract, and liable for the loss occasioned to the charterer.

　　[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 165–168; Dec. Dig. § 43.*]

In Admiralty. Suit by the Brothers Valley Coal Company against Charles V. Minott, Jr., and others. Decree for libelant.

Wallace, Butler & Brown, of New York City, for libelant.
Howard M. Long, of Philadelphia, Pa., for respondents.

HAZEL, District Judge. Libel to recover damages sustained on account of breach of charter party.

In view of the charter party, containing an implied warranty that the schooner Frances M. should be seaworthy and fit for carrying the merchandise therein specified, and that, on discharge of her cargo then on board, she would proceed without unnecessary delay to load at Baltimore, her failure to do so on the ground specified does not relieve her from the breach. The contention that the warranty as to her seaworthiness did not, in fact, attach until the beginning of the voyage, is not germane to the facts under consideration. The master of the Frances M. was presumed to have known of the condition of the vessel and the character of the overhaul repairs necessary to be made after the discharge of the cargo of lumber, and should, therefore, have protected his ship in the charter party against delays of this description. That it was subsequently learned that her rudder post was unfit does not operate to relieve her from liability for the expenses incurred by libelant on account of the breach of the condition of seaworthiness. It was the duty of the vessel to give reasonable notice to the libelant that repairs were necessary before proceeding to Baltimore, so that it could take measures to be relieved from the expenses of reconsigning the merchandise. I think that the decision of Judge Adams in Heller v. Pendleton (D. C.) 148 Fed. 1014, is an authority for holding here that, as the vessel stipulated that she was seaworthy and fit for carrying coal and would proceed to load without unnecessary delay, she had

---
*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

no margin for repairs, and is not excused for her breach of the agreement.

The cases to which my attention was directed by proctor for respondents—Cole v. Davidson, Aspinwall, 374; Gill & Fisher, Ltd., v. Browne, 53 Fed. 394, 3 C. C. A. 573; Sumner v. Caswell (D. C.) 20 Fed. 249, and Worms v. Storey, 25 L. J. (Ex.) 1—are not applicable. The case of Gill & Fisher, Ltd., v. Browne, supra, is claimed to be on all fours with the case in suit, but reference thereto will show that, while the vessel agreed to sail with all convenient speed, the charterer was given the right to cancel the charter party if the steamer was not ready for cargo on or before the 31st day of January. It was known at the time the charter party was entered into that, before sailing with the merchandise specified in the agreement, the vessel had to proceed on a voyage from Charleston to Bremerhaven. Her voyage to Bremerhaven was made with reasonable dispatch, but she was detained for necessary repairs, and was unable to get back to Charleston until the last day of the month when the charterer's option to cancel would expire.

In Sumner v. Caswell, supra, the charter party contained the usual clause relating to seaworthiness, and the vessel, after proceeding on the voyage, was found to be unfit and unsteady. It was necessary to her safety that she jettison a portion of her cargo, and, when she arrived at her destination, a claim was made by the cargo owners for the cargo jettisoned. The court held that the implied terms of the charter party and the bill of lading included an implied warranty of the seaworthiness of the vessel at the time she sailed, and hence she was bound to make good the loss. So, also, in Worms v. Storey, supra, the vessel's unfitness was discovered after the commencement of the voyage, and in such circumstances the court held it was the duty of the owner either to repair or to refrain from proceeding to sea, and, having gone to sea in an unworthy state, the vessel was liable for the loss sustained by reason of a partial jettison of her coal cargo.

These cases are on a different principle from the case in suit, wherein the libelant seeks to recover its outlay for the reconsignment of the merchandise, made necessary by respondents' breach of the charter party in failing to provide a seaworthy vessel in accordance with its terms, and in unnecessarily delaying her arrival at Curtis Bay. The stipulation, as heretofore stated, was that the Frances M. was seaworthy, and in every way fitted for carrying the coal in question, when, in fact, she presumably was not in such condition. If, after making the charter party, a mishap had incapacitated the vessel, then, no doubt, she would be in a position to protect herself from liability by the exception clause, but not where the circumstances are such as are shown by the evidence. The proofs show that, had the Frances M. been seaworthy and fit for carrying the merchandise specified in the contract, she would, after unloading her cargo of lumber at the port of New York, have arrived in due course at the port of loading on or about May 15, 1912. As she did not arrive until June 2d following, she did not proceed without unnecessary delay as provided in the charter party, and the libelant is entitled to a decree, with costs, and reference to a commission to ascertain the amount of the damages.