## ARMOUR GRAIN CO. v. COMPAGNIE GENERALE TRANSATLANTIQUE.

District Court, S. D. New York. July 22, 1925.

1. **Shipping** ⊜⟹118—**Ship must sail within reasonable time after loading, without contrary agreement.**

   A ship is bound to sail within a reasonable time after loading, unless there is an agreement to the contrary.

2. **Shipping** ⊜⟹118—**Carrier, under contract providing loading date, must show notice to shipper's representative of delay in sailing date for repair of machinery.**

   Where contract for cargo space provided certain date for loading, it is incumbent on carrier to show by preponderance of evidence that it notified shipper's representative that ship's machinery had been removed and was in process of repair, and that sailing date would be delayed accordingly.

3. **Shipping** ⊜⟹121(2)—**Ship, whose turbine engines have been removed for repairs, is not "seaworthy."**

   A ship, whose turbine engines have been removed and are undergoing repairs, is not to be considered as "seaworthy."

4. **Shipping** ⊜⟹118—**Delay in sailing until March 22, after loading cargo on February 25, held unreasonable.**

   Delay in sailing until March 22, when cargo had been loaded on February 25, *held*, in absence of agreement to the contrary, an unreasonable delay in sailing.

5. **Shipping** ⊜⟹131—**Carrier, unreasonably delaying sailing, held liable for difference in market price at port of delivery on date it should have arrived and date of actual arrival.**

   Where ship, contracting to furnish cargo space for grain shipment, unreasonably delayed sailing until March 22, after loading cargo on February 25, carrier was liable in damages for difference between market price of grain at port of destination on date when it should have arrived and market price on date of actual arrival.

In Admiralty. Suit by the Armour Grain Company against the Compagnie Générale Transatlantique. Decree for libelant.

Decree affirmed 26 F.(2d) 741.

Duncan & Mount and Russell T. Mount, all of New York City, for libelant.

Joseph P. Nolan, of New York City, for respondent.

GODDARD, District Judge. This is a suit to recover damages alleged to have been sustained by the libelant through the failure of the respondent's steamship Ontario to sail from the port of Philadelphia within a reasonable time after loading libelant's grain and consequent delay in arriving at Hamburg, her destination. The libelant's grain was loaded on the steamship Ontario at Philadelphia on February 24 and 25, 1921;

the bills of lading were issued to the libelant February 26, 1921. The contract under which the grain was shipped was dated February 24, 1921, and was signed on behalf of the respondent by Geyelin & Co., by H. L. Geyelin, and on behalf of the libelant by the North American Forwarding Company, N. P. Goldman. Goldman was manager of the North American Forwarding Company, freight brokers, employed by the libelant's Philadelphia agent to secure cargo space. The said contract reads as follows:

"Grain Freight Contract.

"North American Forwarding Corp.,

"Freight Brokers and Forwarding Agents,
The Bourse, Philadephia, Pa.

"Contract Phila.—2166.

"Engaged for account of Armour Grain Co. No.

"Freight from Philadelphia to Hamburg per A 1, steamer Ontario, February loading.

"To arrive and expected to sail

"In port sailing

"Agents French Line.

"9 loads heavy grain in bulk and/or steamer's bags, steamer's option, on steamer's call. At 20¢ per

"North American Forwarding Company,
"N. P. Goldman, Freight Brokers.
"Philadelphia, Feb. 24, 1921."

The steamship Ontario arrived in Philadelphia on January 19, 1921, and docked on January 21, 1921. On her arrival her turbines were damaged and were removed on January 21st or 22d from the vessel for the purpose of being repaired, and remained out of the vessel until March 19, 1921. She finally sailed on March 22, 1921, and arrived at Hamburg, after a voyage of 17 days, on April 8. The libelant claims as damages the difference between the market price at Hamburg on the date when the vessel should have arrived at Hamburg, namely, about March 18, 1921, and the market price when the vessel actually arrived there, namely, April 8.

The libelant did not advise the respondent that the grain was being shipped to fill a special contract, and therefore does not claim special damages. The libelant's claim is based on the ground that (1) the steamship Ontario was not seaworthy for the voyage contracted for, either when the contract of affreightment was made on February 24, 1921, or when the cargo was loaded on February 24, 25, 1921; and (2) that the failure of the Ontario to sail until March 22, 1921, was an unreasonable delay, and constituted a breach by respondent of the freight contract.

The respondent claims that, at the time of making the contract of carriage, its representatives informed the libelant or its representatives that the vessel's engines were under repair and that her sailing date was indefinite. The libelant denies this, and swears that they knew nothing of the condition of the vessel's engine and the probable delay in her sailing until a considerable time after its grain had been loaded on the Ontario.

[1, 2] A ship is bound to sail within a reasonable time after loading unless there is an agreement to the contrary. The Propeller Niagara v. Cordes et al., 21 How. 7, 16 L. Ed. 41. Where the contract provides "February loading," as this contract does, it is incumbent on the respondent to show by preponderance of evidence that it notified the libelant's representative that the ship's machinery had been removed and was in process of repair and that her sailing date would be delayed pending such repairs. The testimony is undisputed that the usual time for a ship to discharge and take on cargo in Philadelphia in 1921 was about a week, and that grain was usually loaded after the general cargo, and the ship should sail two or three days after the grain was on board. Therefore it appears that the customary sailing time for the Ontario would have been around March 1, and not March 22, when she did sail.

There was a sharp difference of recollection as to conversations which took place at the time the contract was made; the witnesses for the respondent testifying that the representatives of the libelant were told that the Ontario's engines were being repaired and that her sailing date was indefinite, and further that the representatives of the libelant stated that they were interested in the loading date, but not the date of sailing, as the loading date was sufficient for their purposes. This is denied by all the representatives of the libelant who had to do with the transaction, and my opinion was, at the time I saw the witnesses and heard them testify, that the version given by the libelant's witnesses was the correct one.

I was impressed with the character of Mr. Philip Markley and the definiteness with which he testified to the circumstances when he first learned of the delay in the Ontario's sailing. The testimony of Mr. Goldman and Mr. Bankert was also convincing. On the other hand, Mr. Geyelin impressed me as a truthful gentleman, but one whose memory as to these events was rather dim. This is

emphasized by his testifying that he did not recall advertising the Ontario for any special sailing date; yet the fact is that the Ontario was advertised in the Philadelphia Public Ledger on January 28, 31, February 2, 4, and 7, 1921, with the sailing date February 15. Respondent's witness Schad testified that he overheard the conversation in which Mr. Geyelin notified Mr. Goldman that the sailing of the ship was indefinite, but his recollection is inconsistent with that of Mr. Geyelin in one rather important detail, and altogether his testimony was not convincing.

[3-5] A ship whose turbine engines have been removed and are undergoing repairs is not to be considered as seaworthy. Oneida Navigation Co. v. Richardson & Co., Inc. (C. C. A.) 282 F. 241. The delay in sailing until March 22, 1921, when the cargo had been loaded on February 25, is, in the absence of agreement to the contrary, an unreasonable delay in sailing. For such delay the respondent is liable in damages for the difference between the market price of the grain at Hamburg on the date when it should have arrived and the market price at Hamburg on the date of the actual arrival there of the grain. Brothers Valley Coal Co. v. Minott, et al. (D. C.) 203 F. 186; The Giulio (D. C.) 34 F. 909.

Thereafter a decree may be entered in favor of the libelant for the difference between the market price of the grain at Hamburg on March 18 and April 8, 1921.